### FARGO v. FARGO et al.

*(Supreme Court, General Term, Fifth Department. October 23, 1890.)*

RESCISSION OF MARRIAGE SETTLEMENTS.

     Within an hour before marriage, a contract, executed by the husband, was presented by his attorney to the wife, and was executed by her, she fully understanding its contents. She was a widow, 49 years of age, and the husband was a widower 61 years of age. Both parties had considerable property, the husband's being of the greater value; and they had a general knowledge of each other's property. By the contract, each agreed not to claim any part of the property of the other, except as therein provided. Sixteen years after the marriage, they having separated after two years, the wife, for the purpose of conveying lands in Iowa without the husband joining therein, recorded her copy of the contract in that state. After the death of the husband, 24 years after the marriage, she sued to have the contract adjudged void, on the ground of representations by the husband and by his attorney and in recitals in the instrument, inducing her to believe that, unless it was executed, the husband would obtain her property or some in-

terest therein; and she would lose her right of disposal thereof. *Held*, that it was then too late to ask that the contract be declared void; and that, having cut off her husband's interest in her Iowa lands, under the contract, she could not claim an entire failure of the consideration thereof, although he had failed to provide for her during his life, and by his will, in accordance with its terms.

Appeal from judgment on report of referee.

Action by Emeline C. Fargo against John M. Fargo and others, executor and devisees and legatees of Allen Fargo, the deceased husband of plaintiff, to have an antenuptial contract between them adjudged void and of no effect.

Argued before DWIGHT, P. J., and CORLETT and LEWIS, JJ.

*Frank W. Brown*, (*F. C. Peck*, of counsel,) for John M. Fargo, appellant. *L. A. Hayward*, (*F. C. Peck*, of counsel,) for other appellants. *L. W. Thayer*, for respondent.

LEWIS, J. On the 23d day of November, 1864, the plaintiff, then a widow 49 years of age, intermarried with the testator, Allen Fargo, a widower 61 years of age. Both of them were, at the time of their marriage, and had been for many years, residents of Wyoming county; were well acquainted with each other, and had a general knowledge of each other's property rights and interests. The plaintiff, at the time of her marriage, was the owner of an undivided interest in a farm of 224 acres in Wyoming county. She owned 560 acres of land in the state of Iowa. She had $1,500 in government bonds, and a quantity of household furniture. The testator was the owner of a considerable quantity of land in the village of Warsaw, N. Y. It does not appear precisely how much, but less than 140 acres, worth some $80 an acre. He was also the owner of lands in the state of Iowa, and had quite a large personal estate. He owned a furnished dwelling-house in Warsaw. From half an hour to an hour before the marriage ceremony was performed, Judge Comstock, a lawyer residing in Wyoming county, and well known to the plaintiff, called at the testator's house, where the plaintiff then was, and produced and read over to her an antenuptial contract which had been theretofore prepared in duplicate, and which had then been executed by the testator. The plaintiff, fully understanding its provisions, executed the same without objection. The contract was executed in duplicate, the plaintiff retaining one copy, and the other being delivered to the testator by Judge Comstock. The contract provided that—"Whereas, a marriage is contemplated and is about to be solemnized between the said parties; and whereas, each of said parties is seised of a considerable estate, and not desirous of inheriting or becoming possessed of the property of the other except to the extent hereinafter provided for, and each has a child or children, and is desirous that such child or children shall inherit and receive the property of his father or mother, at his or her death, but the said party of the first part is desirous of providing a house and lot where the said party of the second part may reside as long as she may live and choose to occupy the same: Now, therefore, the said party of the first part doth hereby agree that, if the said marriage shall be solemnized as aforesaid, and in case said party of the second part should die during his life-time and leave him surviving, he will not make any claim to any part of her property, either personal or real, but that the same shall go to her heirs and legal representatives other than said party of the first part. And the said party of the first part also agrees that in case said marriage shall be solemnized, and in case of his death, leaving the said party of the second part him surviving, he will, by his last will and testament, or otherwise, give, secure, and bequeath to her the interest of $1,000 during her life-time, and also convey or devise, or cause to be conveyed to her, the use of the dwelling-house where he now resides in Warsaw, aforesaid, together with one acre of land on which the same stands bounded," etc. "Which house and acre the said party of the second part sha.

have the right and privilege of occupying as long as she shall live, if she chooses to do so, but, whenever she shall cease to occupy the same, by death or otherwise, then the said house and lot shall revert to the heirs and assigns of the said party of the first part, and she shall also have the household furniture left in said house at the time of his death, in case she survives him. And the said party of the second part agrees that in case said marriage shall be solemnized, and in case said Fargo shall die leaving her surviving, she will not make any claim to any part of the property of said Allen Fargo, either real or personal, except to the use of the said house and lot as above provided. And she hereby agrees to relinquish all right of dower and thirds and every other interest, except as above provided, to or in any and every part of the real and personal property of said Allen Fargo, to the end that such property, except as above provided, may go to the heirs, assigns, and legal representatives of said Allen Fargo other than said party of the second part, and she does hereby renounce all right of dower, and every other interest in the real estate and personal property of said Fargo, except as above expressly provided." (Signed and sealed by the parties.)

The parties were married and lived together as husband and wife for about two years, and then, for reasons satisfactory to them both, the plaintiff went back to her farm to reside, the testator remaining at his home in Warsaw. They visited each other at their respective places at short intervals, remaining for a day or two at a time. Amicable relations between them continued for a time, the case does not show how long. Finally differences arose between them, and the testator refused to longer provide for or live with the plaintiff. They never lived together thereafter. The testator died December 26, 1888, leaving a last will and testament, which was duly admitted to probate in Wyoming county. No provision was made therein for the plaintiff. Mr. Fargo's personal property at the time of his decease was worth about $36,000. The value of his real estate does not appear, but it was of considerable value. He had, prior to his decease, rented his house, reserving rooms in it for himself, and removed all of his furniture therefrom, except that contained in the rooms occupied by him. The house was thereafter occupied by a tenant, who was in possession at the time of Mr. Fargo's death, holding the same from year to year. The devisees and legatees of the testator, and all others interested in the estate after the death of Mr. Fargo, and before the commencement of this action, executed and tendered to the plaintiff an agreement in writing, securing to her all that the antenuptial contract provided that she should receive from Mr. Fargo. Mr. Fargo's copy of the antenuptial contract was recorded in Wyoming county, and thereafter, and before his death, he conveyed, without plaintiff's joining with him in the conveyances, some 60 different pieces of land in Wyoming county, of the aggregate value of over $50,000. The plaintiff desiring to convey a portion of her Iowa lands, and the intended purchaser objecting to the title unless her husband joined in the conveyance, she caused her copy of the antenuptial contract in the year 1880 to be recorded in the proper office in the state of Iowa, and thereupon conveyed the land, Mr. Fargo not joining in the conveyance. The referee finds that the plaintiff knew the contents of the instrument when she signed it. The referee further finds that plaintiff believed that by her marriage with said Allen Fargo, except for such agreement, he would obtain, or become possessed of, plaintiff's said property, or some part thereof, or interest therein, and that, unless said instrument was executed, she would, by said marriage, lose or impair in some way her absolute ownership and right of disposal of said property, and that this was represented to her by said Allen Fargo and his attorney in and by said instrument, and by the recitals thereof. He further finds that the recitals were not true, and that the said marriage would not have made any difference in plaintiff's ownership of her property, nor in her disposition of the same in view of her death or other-

wise, other than what she would have had if said instrument had not been made, and that she was induced to execute said instrument by her confidence in Mr. Fargo, and her then existing relations with him, and her belief in the truthfulness of said representations so made to her by said instrument.    The only evidence thereof, if any, is to be found in the antenuptial contract.

Antenuptial contracts, if fairly made and executed without fraud or imposition, are favored by the law, and will be enforced by the courts according to the intention of the parties.    They are frequently highly beneficial to the parties.    *Johnston* v. *Spicer*, 107 N. Y. 185, 13 N. E. Rep. 753; *Clark* v. *Clark*, 28 Hun, 509; *Neely's Appeal*, 124 Pa. St. 406, 16 Atl. Rep. 883; *McNutt* v. *McNutt*, 19 N. E. Rep. 115.    The parties to this contract were, at the time of its execution, of mature years.    The plaintiff was a widow 49 years of age, and had one child 15 years old.    The testator was a widower 61 years of age, with a number of grown-up children, and some grandchildren. Plaintiff was possessed of considerable property.    The testator's estate, however, was of much more value.    Neither of them had been in any way, so far as we learn, instrumental in the accumulation of the other's property.    Their marriage was apparently, in the main, a business transaction.    Sentiment was not probably a very important factor in the matter.    The plaintiff, as we assume from the evidence, was by prearrangement at the house of the intended groom, and a half hour or an hour before the ceremony was to be performed, Judge Comstock, a lawyer well known to the plaintiff, presented to her the contract already executed by Mr. Fargo.    It is read over to her; she understands fully its contents,—so the referee finds in his findings of fact.    There is nothing in the case tending to show that she was surprised at the presentation of the paper at that time and place.    She is the only witness who speaks of what occurred.    She says: "I was married in Fargo's house.    A writing was brought to me before the marriage by Judge Comstock.    He read it, and I signed it about half an hour to an hour before we were married,—the same evening. I had known Fargo about nine years before I married him.    We visited back and forth.    He lived in Warsaw.    I knew before the marriage that he owned lands in Warsaw and the west, and had money invested there.    I knew his wife and children."    She further testifies that a duplicate copy of the contract was handed to her at the time it was executed, and in the year 1880, after it had been in her possession for 16 years, wishing to convey a part of her Iowa lands, she sent it to that state to be recorded, and thereupon conveyed a portion of her lands without the signature of her husband to the deed.    By recording the deed and conveying the land, she said, as plainly and unequivocally as was possible: "I know what this contract is,—just what rights are secured to me by it.    I choose to ratify and confirm it."    She retained possession of it for 8 years thereafter prior to the death of Mr. Fargo; 24 years in all.    It is now too late to ask that the same be declared void.    The statute of limitations should be held a bar against her claim.    *Davis* v. *Wood*, 10 N. Y. Supp. 460.

The antenuptial contract provided that plaintiff was to receive, if she survived the testator, the interest of $1,000 during her life, and the right to occupy the dwelling-house, with such furniture as should be therein at the time of Mr. Fargo's death.    Mr. Fargo failed to make these provisions for plaintiff in his will.    The parties not having lived together for many years prior to Mr. Fargo's death, the dwelling which the agreement contemplated they should occupy was rented, and Mr. Fargo's furniture was removed therefrom, with the exception of a small portion remaining in the rooms occupied by him.    Had they continued to occupy the house instead of renting it, the furniture would probably have remained in the house until the death of Mr. Fargo.    The referee in his findings assumes that, had the marriage been entered into, and the contract not executed, the testator would not have acquired any interest in the plaintiff's property, and he finds that the recitals in the

contract in regard thereto were untrue, and that the marriage would not have made any difference.in plaintiff's ownership of her property, nor in her right to dispose of the same; and these findings are substantially the basis of the referee's conclusion that the plaintiff was induced to enter into the contract by false representations, and that the contract was void. The referee, I think, fell into an error when he assumed that Mr. Fargo did not, by the marriage, acquire any rights or interest in plaintiff's property, in the absence of the contract. Under the Iowa Code, 1873, p. 421, he would have had an inchoate interest to the extent of one-third in plaintiff's lands in that state, which would have ripened into a fee if he had survived his wife. Under the laws of this state at the time of the marriage, had the plaintiff died intestate, leaving her husband surviving, he would have been entitled to administer upon and enjoy her personal estate. *Barnes* v. *Underwood*, 47 N. Y. 352. The plaintiff, by the recording of her copy of the contract, and conveying her Iowa lands, cut off the testator's interest therein. She thereby availed herself of the benefit of the provisions of the contract after having ample opportunity to inform herself of her rights under it. This is sufficient, I think, to distinguish this from that class of cases where there is an entire failure of the consideration of the contract. *Freeland* v. *Freeland*, 128 Mass. 511. Should the devisees and legatees of the testator refuse to secure to the plaintiff the use of the dwelling-house, and the interest upon the $1,000, she can compel a specific or substituted performance of that part of the contract. This would secure to her full justice, and prevent litigation over the titles to the lands conveyed by her late husband during the continuance of their marriage. While the courts watch with jealousy to see that parties are not induced by fraud or deception to enter into antenuptial contracts, I fail to find in this case any evidence of fraud or misrepresentation leading to the execution of this contract. It seems to have been voluntarily and understandingly entered into, acquiesced in without complaint for 24 years, with ample information on the part of the plaintiff as to the comparative value of the two estates, and I do not see any reason for declaring it void. The judgment should be reversed, and a new trial granted, before another referee, with costs to abide the event.